1

2

**07-CV-00759-AF**

3

4

5

6

7

8

Judge Marsha J. Pechman



——— FILED    ——— ENTERED
——— LODGED   ——— RECEIVED

MAY 2.8 2007    DB

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9 | GREGORY REQUA, ADULT STUDENT ) Case No.: C07-0759 MJP

10 |       Plaintiff, )

11 |     vs. ) DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION

12 | KENT SCHOOL DISTRICT No. 415; ) FOR TEMPORARY RESTRAINING ORDER

13 | BARBARA GROHE, SUPERINTENDENT; )
AND MICHAEL ALBRECT, PRINCIPAL )

14 |      Defendants )

15

16

## INTRODUCTION

17

    This matter comes before the court on plaintiff's motion for a temporary restraining

18

order. Plaintiff Gregory Requa is currently suspended from regular classes and enrolled in

19

"contract school" for his participation in an effort to record images of a teacher in the classroom,

20

two portions of which violated the school's sexual harassment policies. The conduct of the

21

plaintiff and other participants also violated the school's prohibition against the use of personal

22

electronic devices in the classroom. Contrary to the plaintiff's claims, the Kent School District's

23

24

25

Kent School District General Counsel
12033 S.E. 256th Street
Kent, Washington 98030
253-373-7842
FAX 253-373-7202

Dockets.Justia.com

1  board of directors upheld his suspension based on <u>conduct</u> in the classroom, not his criticisms of

2  the teacher or other opinions expressed on the internet.

3  ### *BACKGOUND FACTS*

4  Plaintiff Gregory Requa is a senior at Kentridge High School, a public school in the Kent

5  School District. Ms. M. was a teacher in the Kent School District who retired at the end of the

6  2005-2006 school year. During that school year, students in Ms. M.'s class recorded images of

7  the teacher in her classroom. The video recordings may have been made with a telephone, a

8  small video recorder, some other technology, or a combination of such devices. The scenes were

9

10  obviously recorded on different days, because Ms. M. is wearing different clothing at various

11  times throughout the video that was subsequently created.

12  The various images and scenes were combined, edited, and supplemented with graphics,

13  musical soundtracks, and various special effects before being posted on the internet at a

14  commercial website, YouTube.com. The plaintiff also posted a copy of the final video on his

15  personal webpage at MySpace.com.

16  The school administration was unaware of the posting, in part because school computers

17  available to staff (and students) are not able to access certain commercial websites. In February,

18  2007, a local media outlet contacted Principal Michael Albrecht at Kentridge and asked about the

19  video. Mr. Albrecht accessed the video for the first time, and shared what he discovered with

20

21  district administration. Of particular concern were two portions of the video that revealed

22  conduct in violation of school policy.

23  During one of the first scenes, Ms. M. is seen at the front of the classroom addressing her

24

25

MEMORANDUM IN OPPOSITION TO TEMPORARY
RESTRAINING ODER (CO7-0759MJP) - 2

Kent School District General Counsel
12033 S.E. 256th Street
Kent, Washington 98030
253-373-7842
FAX 253-373-7202

students.  A male student stands behind her, smiling toward the camera, and engaging in conduct and gestures of which she is unaware.  The student waves his hand in front of his nose, as if waving off an offensive odor.  The student then puts two fingers up behind Ms. M.'s head. Finally—and what concerned school administrators—the student engages in a move that students today sometimes refer to as a "dirty dancing" move—that is, the student leans back and makes what the board of directors would later describe as a "pelvic thrust" movement towards Ms. M's buttocks.  See Appendix A (The Kent School District Board of Director's Findings of Fact and Conclusions of Law).  While brief, the gesture is nevertheless lewd and offensive conduct of a sexual nature.

In a later scene, Ms. M. is shown bending over to pick up something from the floor, and the camera focuses on her buttocks.  The image of her buttocks flashes repeatedly in the recording, and then the scene cuts to another day where the camera is again focused on Ms. M's buttocks as she walks back and forth at the front of the class.  The true intent of the person(s) recording the images is made more clear by the graphics and music attached to the final product: the graphic "Caution Booty Ahead" precedes this portion of the video, and the musical soundtrack (according to the credits at the end of the video) accompanying this portion of the video is a rap song titled "Ms New Booty".  As the board of directors acknowledged in their findings and conclusions, "booty" is a popular slang term for a person's buttocks.

Mr. Albrecht initiated an investigation to discover the students involved in recording the teacher in the classroom, beginning with the young man seen standing behind Ms. M. at the front of the classroom and in several other scenes during the video.  The investigation revealed the

MEMORANDUM IN OPPOSITION TO TEMPORARY
RESTRAINING ODER (CO7-0759MJP) - 3

Kent School District General Counsel
12033 S.E. 256th Street
Kent, Washington 98030
253-373-7842
FAX 253-373-7202

1  names of the students involved, including plaintiff Gregory Requa and student S.W.[1]  S.W. was

2  encouraged by Mr. Albrecht to tell the truth about what happened.  S.W. gave a written statement

3  (Appendix B) that states:

4      *"About the last 5 days of school Greg Requa and I filmed [Ms. M.] without her consent*
5      *and posted it online.  Greg did editing and posted it online.  All I did was some filming."*

6  Mr. Albrecht also spoke to other students who had knowledge about those involved with the

7  video project.  Four students wrote out statements about what the plaintiff and S.W. had told

8  them.  At the subsequent administrative hearings the students were identified simply as students

9  number one through four.[2]

10      In his statement, student #1 (Appendix C) said in relevant part:

11      *"[S.W.] did the video taping & Greg did the video taping.  They told me that they did it.*
12      *Last year at the end of the year.  I saw it on MySpace.  I saw it on Greg's site."*

13      In his statement, student #2 (Appendix D) said:

14      *"Greg and [S.W.] told me that they played a role in making the video.  I think Greg did*
15      *most of the video because he told me.  I think Greg did most of the video, because he told*
        *me around June 2006."*

16      In his statement, student #3 (Appendix E) said:

17      *"Last year [S.W.] & Greg Requa told me that they are video [sic] [Ms. M.].  That they*
18      *were putting it taping on Youtube [sic]."*

19      In his statement, student #4 (Appendix F) said in relevant part:

20
21  [1] Gregory admitted at that hearing that he and S.W. are friends.  In response to a claim by Gregory that S.W. had
    turned over his name only to escape punishment, Mr. Albrecht responded that S.W. had merely been encouraged to
22  tell the truth about what had happened.  S.W. was never encouraged explicitly or implicitly to name students who
    were not truly involved in the video project.

23  [2] Mr. Albrecht contacted each of the students who provided statements and asked them to testify in the
    administrative hearings.  Each of the students, including Gregory's friend, S.W., declined to do so and expressed
24  concerns of retaliation if they were identified and testified in person.  Wash. Admin. Code 392-400-315 (2) (a) (ii)
    provides that a witness need not appear at a suspension hearing if the district makes a reasonable effort to produce
25  the witness and the witness declines to do so due to an expectation and fear of retaliation.

MEMORANDUM IN OPPOSITION TO TEMPORARY             Kent School District General Counsel
RESTRAINING ODER (CO7-0759MJP) - 4                        12033 S.E. 256th Street
                                                          Kent, Washington 98030
                                                               253-373-7842
                                                            FAX 253-373-7202

*"What I know of, of the video editing process, is that Greg Requa and [S.W.] both worked on it. The one part I am unsure of however is the part of who did what. I can say that Greg has the highest level of knowledge when it comes to any technology. I am unsure of [S.W.]'s knowledge, but I do know that he isn't unaware of how to edit a video.*

*The part I am not 100% positive about is which one did the most work. . . .*

*. . . . The way I know this information is because of the way the people involved in this situation talked about it so freely. They have told me that they both worked on the editing of the video, trying to display their sense of pride in such an obscene video. "*

The plaintiff also gave Mr. Albrecht a written statement. He claimed to have nothing to do with the video and said that his involvement was merely a rumor started because of his reputation as a video editor. He admitted having the video on his personal MySpace.com website. He claimed that "as soon as I found out that it is against school policy, I removed it from my MySpace."

On February 15, 2007, Mr. Albrecht sent letters to the parents of those involved, including the parents of the plaintiff, notifying them of disciplinary action to be taken equally against all participants. The plaintiff's letter informed his family that the plaintiff was to be placed on long-term suspension for forty days, with twenty days "held in abeyance" if he completed a brief research paper during the suspension. The four reasons for the suspension were listed as harassment of a staff member, an electronic use violation, "disciplinary behaviors," and defiance of school authority.[3] Appendix G (Requa Suspension Letter). The Requa family was provided with due process information and the appellate procedures set out in the Washington Administrative Code.

---

[3] Mr. Albrecht later explained that "disciplinary behaviors" was actually a restatement or summary of the other charges. "Defiance of school authority" referred to the plaintiff's lying to school administrators when directed to tell the truth about his involvement in the video. When the school district board of directors upheld the suspension, the board focused just on the harassment of the staff member and the electronic use violation. See Appendix A.

MEMORANDUM IN OPPOSITION TO TEMPORARY
RESTRAINING ODER (CO7-0759MJP) - 5

Kent School District General Counsel
12033 S.E. 256th Street
Kent, Washington 98030
253-373-7842
FAX 253-373-7202

The plaintiff requested a hearing regarding his suspension pursuant to Wash. Admin. Code 392-400-270. On March 9, 2007, the plaintiff appeared before a hearing officer with his parents and attorney. The hearing officer subsequently issued an opinion focused on whether the school had followed its policies and procedures in taking the disciplinary action, and whether the nature of the circumstances of the alleged offense(s) justified the long-term suspension. The hearing officer concluded that the notice requirements of Wash. Admin. Code 392-400 had been satisfied. The hearing officer upheld the sanction imposed, finding that it was appropriate to the situation and consistent with Kent School District policies and procedures.

The plaintiff appealed to the school district's board of directors pursuant to Wash. Admin Code 392-400- 310, and the board conducted a hearing on April 25, 2007. As before the hearing officer, the plaintiff took two different positions: he claimed that he had no involvement in making the video, but that if he did, posting a video critical of his teacher on the internet was protected speech. After hearing from the parties, viewing the video, and examining witness statements gathered, the board of directors notified the plaintiff that the suspension would be upheld.

The board of directors signed findings of fact and conclusions of law explaining their decision on May 9, 2007. In their conclusions, the board stressed that it was not the criticisms of the teacher on which they relied, but rather the <u>conduct</u> of the students in recording the teacher in ways that constituted sexual harassment under the student handbook. [4] They also concluded that

---

[4] The Kentridge Student Handbook Verbal or physical conduct of a sexual nature constitutes sexual harassment when such conduct has the purpose or affect of interference with an individual's job performance or education or the affect of creating an intimidating, hostile, or offense work/learning environment for district employees, agents, volunteers, parents, or students. See Appendix H.

MEMORANDUM IN OPPOSITION TO TEMPORARY RESTRAINING ODER (CO7-0759MJP) - 6

Kent School District General Counsel
12033 S.E. 256th Street
Kent, Washington 98030
253-373-7842
FAX 253-373-7202

1    use of the electronic recording device in the classroom was a violation of student handbook

2    provisions. The board found that the plaintiff's denial of his involvement was not credible.

3            As noted above, the plaintiff was suspended for forty days with twenty days held in

4    abeyance. The plaintiff was assigned to "contract school," a plan through which the respondent

5    works on his classroom assignments on his own while making contact with a staff tutor for a few

6    hours during the week to keep up with his academics. The suspension from regular classes was

7    initiated May 8, with the understanding that Gregory would complete the research assignment

8    required and return to the regular school setting by June 6. His graduation ceremony is

9    scheduled for Saturday, June 16.

10

11           On May 17, the plaintiff filed his complaint in this court and moved for a temporary

12   restraining order to enjoin the district from imposing any further discipline in this matter.

13                                            **ARGUMENT**

14           1. Standard for issuing a temporary restraining order.

15           In order to obtain preliminary relief, the plaintiff must demonstrate a combination of

16   likely success on the merits and irreparable harm. "To succeed, [plaintiff] must show likelihood

17   of success on the merits and irreparable injury if denied the injunction or that he has raised

18   serious questions and the balance of hardships tips sharply in his favor." Jacobsen v. United

19   States Postal Service, 812 F.2d 1151, 1152 (9th Cir.1987).

20

21           2. The plaintiff is unlikely to succeed on the merits of his First Amendment claims.

22           This motion turns on the reasons for the plaintiff's suspension. The plaintiff has filed two

23   causes of action rooted in the First Amendment, claiming that the district is punishing his free

24

25

MEMORANDUM IN OPPOSITION TO TEMPORARY
RESTRAINING ODER (CO7-0759MJP) - 7

Kent School District General Counsel
12033 S.E. 256th Street
Kent, Washington 98030
253-373-7842
FAX 253-373-7202

speech.  However, as noted by the school board, the suspension at issue is based on the conduct

of the participating students in the classroom during school hours, not on their internet speech.

Recording the teacher in the manner described above is not protected by the First Amendment.

Thus, the plaintiff is unlikely to prevail on claims grounded in the First Amendment.

First Amendment protections extend to student speech within the schoolhouse.  Tinker v.

Des Moines Independent Community School Distinct, 393 U.S. 503, 21 L. Ed. 2d 731, 89 S. Ct.

733 (1969).  With certain exceptions,[5] the Tinker standard permits schools to restrict student

speech only where "necessary to avoid material and substantial interference with schoolwork or

discipline." 393 U.S. at 511.  Courts have also applied the Tinker standard to those situations

where students have created various modes of communication—such as newspapers, websites, or

email—away from the school campus and outside of school hours containing material critical or

disparaging of school officials.  See, e.g., Beussink v. Woodland R-1V School District, 30 F.

Supp.2d 1175 (E.D. Mo. 1998) (granting plaintiff's motion for a preliminary injunction enjoining

his suspension from school for creating a webpage on his home computer outside of school

hours, in which he criticized the school's administrators);  Killion v. Franklin Regional School

District, 136 F. Supp.2d 446 (W.D. Pa. 2001) (granting summary judgment in favor of student

disciplined for composing a "top ten" list on his computer at home that disparaged a school

athletic director) ; Coy v. Board of Education of the North Canton City Schools, 205 F. Supp.2d

791 (N.D. Ohio 2002) (holding that the board of education violated a student's First Amendment

---

[5]School-sponsored speech, such as that contained within a school newspaper, may be regulated so long as the censorship is "reasonably related to legitimate pedagogical concerns." Hazelwood School District v. Kuhlmeier, 484 U.S. 260, 273, 108 S. Ct. 562, 98 L. Ed. 2d 592 (1988). Schools also have the discretion to regulate speech on campus that is lewd, vulgar, indecent and/or sexually explicit. Bethel School District No. 403 v. Fraser, 478 U.S. 675, 683-85, 106 S. Ct. 3159, 92 L. Ed. 2d 549 (1986).

MEMORANDUM IN OPPOSITION TO TEMPORARY
RESTRAINING ODER (CO7-0759MJP) - 8

Kent School District General Counsel
12033 S.E. 256th Street
Kent, Washington 98030
253-373-7842
FAX 253-373-7202

1  rights by expelling him for a web site operated from his home containing foul language and

2  profanity); Mahaffey v. Aldrich, 236 F. Supp.2d 779 (E.D. Mich. 2002) (summary judgment

3  granted for student who was suspended by school for contributing to "Satan's web page").

4      However, the First Amendment does not generally protect conduct, other than conduct

5  intended to be symbolic or expressive. See Virginia v. Black, 538 U.S. 343, 155 L. Ed. 2d 535,

6  123 S. Ct. 1536 (2003) (the First Amendment affords protection to actual speech and conduct

7  that is symbolic or expressive); Smith v. Goguen, 415 U.S. 566, 586, 39 L. Ed. 2d 605, 94 S. Ct.

8  1242 (1974) ("[The First] Amendment, of course, applies to speech and not to conduct without

9  substantial communicative intent and impact." (White, J., concurring)). The classroom conduct

10  that is the foundation of the suspension—that is, recording the teacher's buttocks in class and

11  recording a student making a lewd and vulgar gesture toward the teacher—was neither

12  expressive nor intended to communicate an idea. Certain elements of the video eventually

13  posted on the internet did, in fact, communicate criticisms and opinions that are clearly protected

14  by the First Amendment. But the school board made clear that the punishment upheld was not

15  directed at the speech or opinions contained in this video.[6] The video posted on the internet

16  merely depicted that conduct being punished and, in general, revealed to the school

17

18

19

20

21  [6] In their findings and conclusions, the school district board stated: "The Board of Directors rejects the First
   Amendment challenge argued by Greg's legal counsel; the Board concludes that the discipline is appropriate and
22  should be upheld based on the conduct of the students involved, i.e., secretly recording the teacher in at least two
   ways that constitute sexual harassment; and that such conduct occurred on school grounds during class. The Board
23  finds that the editing and posting of the video off-campus was, at best, incidental to the punishable conduct that
   occurred in the classroom. The punishment in this case is not for the purpose of regulating 'speech' created off-
24  campus."

25

MEMORANDUM IN OPPOSITION TO TEMPORARY                    Kent School District General Counsel
RESTRAINING ODER (CO7-0759MJP) - 9                            12033 S.E. 256th Street
                                                            Kent, Washington 98030
                                                                 253-373-7842
                                                              FAX 253-373-7202

1   administrators what was occurring in the classroom that otherwise may have not been disclosed.

2   The depicted conduct itself, however, was the focus of the suspension.

3       Similar scenarios can serve to illustrate the difference between why the school district

4   *actually punished the plaintiff and what the plaintiff claims in his papers filed with the court.* It

5   is not uncommon, for example, for students to place photos of themselves at parties on

6   commercial websites such as MySpace.com. Student athletes depicted drinking alcohol have

7   been punished not for the "free speech" or expression arguably attached to displaying such

8   images from the privacy of their homes, but for the underlying conduct depicted. See, e.g.,

9

10  David Rattigan, Young Drinkers Caught on Web; Some Pentucket Students Disciplined, Boston

11  Globe, May 6, 2007; Police Tap Student Sites to Fight Crime, eSchool News Online (December

12  1, 2006) <http://www.eschoolnews.com/news/showStory.cfm?ArticleID=6728>. Likewise, a

13  person who photographs or films a victim's "intimate areas" in violation of Washington's

14  voyeurism law (Rev. Code of Wash. § 9A.44.115) and who posts the image on the internet

15  would not be able to rely on First Amendment protections to argue against punishment under the

16  state criminal code. In the same way, a school has the authority to punish classroom conduct

17  violating school policies, even when the school learns of such conduct through images posted on

18  the internet outside of the school setting. Where the conduct is lewd, offensive, and of a sexual

19  nature, the school should determine whether this conduct violates the regulations set out in the

20  school's student handbook. This is what occurred in the present case, and the school board acted

21  within its authority in upholding the discipline imposed against the plaintiff.

22

23

24

25

MEMORANDUM IN OPPOSITION TO TEMPORARY
RESTRAINING ODER (CO7-0759MJP) - 10

Kent School District General Counsel
12033 S.E. 256th Street
Kent, Washington 98030
253-373-7842
FAX 253-373-7202

3. <u>The plaintiff will not suffer irreparable injury if the court denies his request, but granting his request will essentially eliminate the school's ability to impose a sanction for his behavior.</u>

As noted above, the plaintiff is a senior at Kentridge High School, scheduled to graduate in a ceremony on June 16, 2007. He was sanctioned with a forty-day suspension, beginning on May 8, with twenty days held in abeyance if he completes the research paper assigned by Mr. Albrecht related to his offense. The plaintiff can thus return to school on June 6, ten days before his graduation. The suspension cannot cause him to suffer academically.[7] His absence should cause no "irreparable harm."

On the other hand, if this court enjoins the district from continuing the plaintiff's discipline, the court will essentially extinguish any further sanction. It is highly unlikely that this matter will be resolved in the next twenty-five days. Once the plaintiff graduates as scheduled, the district will lose any further authority to hold him accountable for his participation in the sexually harassing conduct in this case. Such a resolution will not only result in an inequitable consequence when compared to the other participants, it would undermine the community message that sanctions are meant to communicate.

## CONCLUSION

The plaintiff's motion for a temporary restraining order should be denied. The plaintiff has mischaracterized his suspension as punishment for exercising his free speech, when the suspension was actually directed at classroom conduct during school hours. The First Amendment does not extend to the conduct for which he was sanctioned, and he is unlikely to

---

[7]Wash. Admin Code 392-400-235 (1) mandates: "No form of discipline shall be enforced in such a manner as to prevent a student from accomplishing specific academic grade, subject, or graduation requirements."

MEMORANDUM IN OPPOSITION TO TEMPORARY
RESTRAINING ODER (CO7-0759MJP) - 11

Kent School District General Counsel
12033 S.E. 256th Street
Kent, Washington 98030
253-373-7842
FAX 253-373-7202

1  succeed on the merits of the two claims that he has filed with this court.  As such, he cannot meet

2  the threshold requirement for preliminary relief.  The defendants respectfully ask this court to

3  deny the plaintiff's motion.

4  DATED THIS 20th day of May, 2007.

5

6

7  Charles W. Lind    WSBA No. 19974
   Counsel for defendants
8  Kent School District, Barbara Grohe, and
   Michael Albrecht
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MEMORANDUM IN OPPOSITION TO TEMPORARY
RESTRAINING ODER (CO7-0759MJP) - 12

Kent School District General Counsel
12033 S.E. 256th Street
Kent, Washington  98030
253-373-7842
FAX 253-373-7202