CO7-0759 MJP
Gregory Requa v. Kent School District, et al.

# APPENDIX "A"



07-CV-00759-DECL

Kent School District Board of Directors

FINDINGS OF FACT AND CONCLUSIONS OF LAW

for

In re Discipline of Gregory Requa

The undersigned Board of Directors of the Kent School District, having heard from the parties and having considered the evidence submitted in this appeal of school discipline pursuant to WAC 392-400-310, makes the following findings of fact and conclusions of law:

## FINDINGS

(1)  Late in the 2005-2006 school year, several students at Kentridge High School secretly recorded a teacher (Ms. M.) on video at various times during the school day in her classroom, and also recorded on video scenes of the classroom itself.  The final production was eventually posted on the Internet on a commercial website ("YouTube").

(2)  The recorded scenes of the classroom itself showed the disarray and disorganization of the teacher by filming scenes of her desk and a closet where various classroom items had been apparently stored.  The recorded scenes of the teacher in class were apparently filmed on different days, since the teacher appears on the video in different clothing.

(3)  Two of the episodes depicted in the video were of particular concern to the Board:

   a.  At one point, a young man who is obviously playing to the person recording the scene walks behind Ms. M. while she is at the front of the class speaking; unbeknownst to Ms. M., the student makes several gestures behind Ms. M's head while she is speaking to the class, and then stands behind Ms. M and makes a "pelvic thrust" movement towards Ms. M's body.

   b.  During another part of the video, someone edited the production and flashed a graphic across the screen that read "Caution Booty Ahead", while a musical soundtrack (per the credits, the song is "Ms. New Booty") is playing featuring the word "booty" (a slang word for one's buttocks); scenes repeatedly showed and

focused on the buttocks of Ms. M close-up, as she walked through the class and as she bent over to pick something up.

(4) It is unclear with what technology the video was created, i.e., whether the video was recorded on a cellular phone with such capabilities, with a hidden video camera, or by some such other device.

(5) The video was edited with graphics, credits, and background music before being placed on the Internet.

(6) The school administration did not learn of the video posting until February of 2007, when a local media station discovered the posting while doing research for a story about school teachers recorded in the classroom without their knowledge.

(7) After viewing the video on "YouTube," Kentridge Principal Michael Albrecht conducted an investigation to discover which students were responsible for having made the video of Ms. M.

(8) The investigation began with the young man who was depicted on the tape doing the "pelvic thrust" behind Ms. M while she stood at the front of the class, and then branched out to more students that he disclosed.

(9) During the investigation, four different students told Mr. Albrecht that Gregory Requa and student S.W. told each of them that they (Requa and S.W.) had been involved with the recording, editing, and/or posting of the video on-line.

(10) Mr. Albrecht spoke to S.W., who stated: *"About the last 5 days of school Greg Requa and I filmed Mrs. [M] without her consent and posted it online [sic]. Greg did editing and posted it online. All I did was some filming."*

(11) Mr. Albrecht asked Greg Requa about his involvement; Greg denied any involvement in making the video. Greg claimed that it was merely rumor that he was involved based on his high level of technical expertise in video editing. Mr. Albrecht asked Greg if there was anyone who could establish that he had not been involved. Greg gave two names of other students. One student said that Greg "did not tell me anything that was going on" and "Didn't tell me he did it." The other student said that he was at Greg's house and did not see him editing it.

1    (12) No one told Mr. Albrecht that Greg Requa was <u>not</u> involved.

2    (13) At the appeal hearing before the Board, Greg denied any involvement in filming,

3        editing, or posting the recording of Ms. M.

## CONCLUSIONS

And, having made the above findings of fact, the Board of Directors now makes these

conclusions:

(1) The Board finds that Greg's denial of his involvement is <u>not</u> credible. While Greg

    claimed at the hearing that his involvement was merely a rumor based on his reputation

    as a skilled video editor, the Board notes that in each witness statement the students said

    that Greg <u>told</u> them he was involved, not that it was a rumor around the school. Greg

    was also identified as involved by his accomplice, S.W., as having been involved in

    editing and posting the video.

(2) The Board of Directors finds that the students who worked to produce this video did so

    in concert to surreptitiously record the teacher in an embarrassing and offensive manner,

    with the obvious intent of humiliating her by posting the video on a publicly-accessible

    website. The Board finds this to be a single enterprise in which the participants—

    regardless of their specific role—are equally culpable.

(3) The Board notes that the handbook at Kentridge High School defines sexual harassment,

    in relevant part, as "activity and other verbal or physical conduct of a sexual nature"

    when "such conduct has the purpose . . . or the affect of creating an intimidating, hostile,

    or offensive work/learning environment . . . for other district employees. . . ." (pages 25-

    26 of the Kentridge High School Student Handbook).

(4) The Board of Directors finds that recording the two episodes discussed above, i.e.:

    a. The "pelvic thrust" gesture made from behind Ms. M. towards her body while

       she was unaware of the student's presence or that the video was being recorded;

       and

    b. The extended, close-up recording of Ms. M's buttocks, a personal and intimate

       part of the human body, while she walked and while she bent over, with the

Findings and Conclusions:  Discipline of Gregory Requa - 3

graphic "Caution Booty Ahead" on the screen and the previously mentioned

musical background;

both constitute activity or conduct of a "sexual nature" that create an intimidating,

hostile, and offensive work environment for any teacher who might be subjected to such

conduct by students made without their knowledge. Thus, the conduct of recording the

*teacher in this manner in the classroom falls under the student handbook's description of*

"sexual harassment."

(5) The Board of Directors rejects the First Amendment challenge argued by Greg's legal

counsel; the Board concludes that the discipline is appropriate and should be upheld

based on the conduct of the students involved, i.e., secretly recording the teacher in at

least two ways that constitute sexual harassment; and that such conduct occurred on

school grounds during class. The Board finds that the editing and posting of the video

*off-campus was, at best, incidental to the punishable conduct that occurred in the*

classroom. The punishment in this case is not for the purpose of regulating "speech"

created off–campus.

(6) The Board of Directors also notes that the Kentridge High School Student Handbook

prohibits the use at school of "personal electronic devices" (including video recorders,

cameras, and other personal electronic devices), and that Greg and his accomplices were

in violation of this provision when they used an electronic device to record Ms. M in her

classroom during class.

(7) The Board of Directors concludes that the school acted appropriately in punishing the conduct mentioned above, and finds that the punishment (forty days, with twenty days held in abeyance) is consistent with the district's standards for the above-mentioned conduct.

Signed this _____9ᵗʰ_____ day of May, 2007, by the following members of the Kent School District Board of Directors:


SANDRA COLLINS, PRESIDENT                    MICHAEL JENSEN


JIM BERRIOS                                  CHRIS DAVIES


BILL BOYCE (absent)

CO7-0759 MJP
Gregory Requa v. Kent School District, et al.

# APPENDIX "B"

About The last 5 days of school Greg Reque
and I Filmed Mrs. Mang without her consent
and posted it online, Greg did editing and
posted it online, All I did was some Filming.

CO7-0759 MJP
Gregory Requa v. Kent School District, et al.

# APPENDIX "C"

1) Last year + you talked to themabout

[S.W.] did the video tape + Greg did the video tape.

They told me that they did it. Last year at the end of the year. I saw it on My Space.

I saw it on Greg's site

CO7-0759 MJP
Gregory Requa v. Kent School District, et al.

# APPENDIX "D"

STUDENT #2

Greg and [S.W.] told me that they played a Role in making the video.

I think greg did most of the video, because he told me. around June 2006

CO7-0759 MJP
Gregory Requa v. Kent School District, et al.

# APPENDIX "E"



STUDENT

Last year ~~s.w.~~ [s.w.]        & Greg Requa
told me that they are video ~~taping~~ Miss
Mong. That they were putting it taping on
You tube.

CO7-0759 MJP
Gregory Requa v. Kent School District, et al.

# APPENDIX "F"

February 14th, 2007
12:51 p.m

STUDENT #4

My name is 

What I know of, of the video editing process, is that Greg Tegua and [s.W.] both worked on it. The one part I am unsure of however is the part of who did what. I can say that Greg has the highest level of knowledge when it comes to any technology. I am unsure of [s.w.]'s knowledge, but I do know that he isn't unaware of how to edit a video.

The part I am not 100% positive about is which one did the most work. There's only one mouse on a computer, which means one of them had to do the editing, and both had to have ideas for subscripts, music, etc.

We can all agree that we know how High School Kids work. The way I know this information is because of the way the people involved in this situation talked about it so freely. They have told me that they both worked on the editing of the video, trying to display their sense of pride in such an obscene video.

Attached is a seating chart of Mrs. Mong's 5th period class which I created from memory. It shows the spot of which the video was filmed during the "Poop" comment. It also shows and proves that [s.w.] l was filming part of the video. This will all be displayed

CO7-0759 MJP
Gregory Requa v. Kent School District, et al.

# APPENDIX "G"



KENT
SCHOOL
DISTRICT

February 15, 2007

Ms. Marlene Requa
17774 – 134th Lane Southeast
Renton, WA 98058

Re:     **Greg Requa – 12th grade**

Dear Ms. Requa:

This letter is to notify you that **Greg Requa** will be placed on long-term suspension for **40 day(s)** in accordance with Kent School District Policy #3241 and Procedure #3241P (Long-Term Suspension) and Kent School District Policy #3240 and Procedure #3240P (Student Conduct Expectations). The long-term suspension will be effective for the following dates: **February 16 – April 23, 2007.** Greg may return to school on **April 24, 2007.** *If Greg completes a research paper that is to the satisfaction of the principal, 20 days of his suspension will be held in abeyance and he may return to school on March 20, 2007.*

Greg will be placed on long-term suspension for the following:

> ➢ Harassment of staff member

> ➢ Electronic use violation

> ➢ Disciplinary behaviors

> ➢ Defiance of school authority

While your child is on long-term suspension, he will not be allowed on any Kent School District property without prior explicit permission. Failure to comply with this regulation may result in further disciplinary action.

Kent School District Procedure #3241P provides you or your child with the option to request a hearing for the purpose of contesting the above allegation and/or sanction. A written request for a hearing must be received by me at the school office within three (3) school business days after receipt of this letter. This means the written request for a hearing must be received by me by February 23, 2007. If I have received a written request for a hearing from you or your child by this date, a hearing will be scheduled to take place within three (3) school business days of the receipt of your written request. School business days applicable to the exercise of the right outlined above are Monday through Friday from 8:00 a.m. to 5:00 p.m., excluding federal and school holidays. If I have not received a written request for a hearing by this date, the hearing will be waived and the long-term suspension will take effect.

If you have any questions please feel free to contact me at 253-373-7345.

Sincerely,

Mike Albrecht
Principal

*Kentridge*
*High School*
·30 SE 208th Street
ent, Washington
98031-2299
h: 253-373-7345
ix: 253-373-7363

cc:          Executive Director
             Security
             Cum File
             Teacher/Counselor
Enclosure:   Student Rights, Responsibilities & Due Process

Rev. 10-03

CO7-0759 MJP
Gregory Requa v. Kent School District, et al.

# APPENDIX "H"

*Minimum: Short-Term Suspension    Maximum: Expulsion*

Possessing and/or using weapons, weapons replicas or any device used to threaten or intimidate

Any firearm

*Minimum: Expulsion*

Any dangerous weapon as defined in RCW 9.41.250 RCW 9.41.260, RCW 9.41.270, RCW 9.41.280

*Minimum: Short-Term Suspension    Maximum: Expulsion*

Any air gun, including any air pistol or air rifle, designed to propel a BB pellet or any other projectile by the discharge of compressed air, carbon dioxide, or other gas

*Minimum: Long-Term Suspension    Maximum: Expulsion*

Replicas of any objects addressed in this section

*Minimum: Short-Term Suspension    Maximum: Expulsion*

Disrupting the educational process

*Minimum: Short-Term Suspension    Maximum: Expulsion*

Unauthorized Access

Keys

File cabinets or other business storage areas

Computer trespass or misuse of authorized access

Unauthorized use of long distance access codes

*Minimum: Short-Term Suspension    Maximum: Expulsion*

Dangerous use of a motor vehicle, seriously endangering students on a school bus

*Minimum: Long-Term Suspension    Maximum: Expulsion*

Criminal acts, assaults or continual defiance of authority

*Minimum: Long-Term Suspension    Maximum: Expulsion*

Sexual Misconduct

*Minimum: Long-Term Suspension    Maximum: Expulsion*

13. Failure to report weapons/ weapons replicas and dangerous instruments on campus

*Minimum: Short-term Suspension    Maximum: Expulsion*

## GANG AFFILIATION/ACTIVITY

The building administrators of all district facilities shall ensure that:

Students identified as possibly involved in gang-related activities receive counseling to enhance self-esteem, encourage interest and participation in wholesome activities, and promote membership in authorized student organizations.

Parents/guardians will be notified of the school's concerns.

In-service training regarding gang activities, methods of operation and current methods of identification is available to staff.

All gang affiliation or gang-type incidents are referred to the appropriate law enforcement agency.

Affiliation with a gang, gang activities or claiming gang membership by students is considered exceptional misconduct and subject to the following corrective actions:

Gang Membership/Activities

*Minimum: Long-Term Suspension    Maximum: Expulsion*

Claimed Gang Membership For The Purpose Of Intimidation.

*Minimum: Long-Term Suspension    Maximum: Expulsion*

Any student suspended for gang activities or affiliation may be required to sign a negotiated behavior contract between the student, parent/guardian and administrator before s/he will be readmitted.

Building administrators have the authority to reduce a long-term suspension to a shorter duration provided the building administrator is convinced that a personal plan is in progress which will result in elimination of future involvement with gangs.

Students who have been expelled or suspended for gang-related activities may lose their rights to remain in school during the appeal process.

## HARASSMENT

Kentridge High School has a zero-tolerance for harassment. It is the policy of the Kent School District (#3209) that all students shall be able to attend and learn in a school setting that is free from all forms of discrimination: creed, race, age, color, religion, sex, handicap, or national origin. Harassment is prohibited in the workplace and school and may result in a short- or long-term suspension.

SEXUAL HARASSMENT INVOLVING STUDENTS. It is the policy of the Kent School District (See Policies 3209, 3210 and 5013) to maintain a learning environment and a workplace free from sexual harassment and intimidation. The existence of such conditions is contrary to federal and state laws and interferes with individual opportunity for successful learning and/or job performance and organizational achievement of the district mission goals.

It shall be a violation of this policy for any employee, agent, parent, volunteer, or student through conduct or communications of a sexual nature. Generally, unwelcomed sexual advances, requests for sexual favors or activity and other verbal or physical conduct of a sexual nature constitute sexual harassment when:

Submission to such conduct is made either explicitly or implicitly a part of the individual's employment or academic environment, including benefits and services, honors, programs, or activities available through the school;

25

Submission to or rejection of such conduct by an individual is used as basis for decisions affecting that individual's employment or education;

Such conduct has the purpose or affect of unreasonable interference with an individual's job performance or education or the affect of creating an intimidating, hostile, or offensive work/learning environment,

Such conduct creates an intimidating, hostile, or offensive work/learning environment for other district employees, agents, volunteers, parents, or students.

*Definition of Sexual Harassment*
Sexual harassment is defined as any unwelcomed sexual behavior-verbal, visual, written, or physical contact.

Sexual harassment can occur and is subject to disciplinary action between any members of the following groups:
**Students, District Employees, Volunteers, Visitors, Contractors, and Consultants**

*Examples of Harassing*
Verbal harassment or abuse.
Remarks to a person with sexual or demeaning implications.
Unwelcome pressure for dates.
Suggesting or demanding sexual involvement.
Questions or comments about sexual activities.
Display or sexually suggestive objects, pictures, posters.
Sexually oriented jokes, innuendoes (insinuations), narrative (stories) or obscenities.
Any aggressive behavior that affects working or learning and is directed toward an individual based on that individual's sex.

*Consequences*
Any student who has been found to have committed sexual harassment by another student, staff member, agent of the district or volunteer may file a complaint without fear of reprisal with one of the following:
Teacher, Counselor, Administrator, or Any other trusted staff member.

*Deciding Factor*
Conduct will be considered from the viewpoint of whether an ordinary reasonable person of the same sex as the complaining party who is aware of the District's expectations of conduct would interpret the conduct in the same manner as the complainant.

*Retaliation*
The School District prohibits retaliatory behavior of any kind against any complainant or any participant in the complaint process. Retaliation includes but is not limited to any form of intimidation, reprisal, or harassment.

*For more information...*
Copies of Sexual Harassment Policies 3209, 3210, and 5013 and all other Kent School District policies can be found in the policy book at each school site. See an administrator for more information.

RACIAL HARASSMENT INVOLVING STUDENTS
Racial harassment occurs when racial or ethnic based verbal conduct or use of physical gesture(s) interferes with an individual's work or school performance. It also occurs if the conduct creates an intimidating, hostile or offensive work or school environment.

Racial harassment includes racial slurs regardless of intent, gestures, insignias, acronyms (e.g. KKK, name calling, swastikas, confederate flags), that make an individual feel threatened or uncomfortable.

*Consequences*
Any student who has been found to have committed racial harassment will be subject to appropriate disciplinary action, up to and including expulsion.

*Reporting*
Anyone who believes s/he has been subjected to racial harassment by another student, staff member, agent of the district or volunteer may file a complaint without fear of reprisal with one of the following:
Teacher
Counselor
Administrator
Any other trusted staff member

26

*Retaliation*
The Kent School District prohibits retaliatory behavior of any kind against any complainant or any participant in the complaint process. Retaliation includes but is not limited to any form of intimidation, reprisal, or harassment.

*For more information* copies of Harassment Policies 3209, 3210 and 5013 and all other Kent School District policies can be found in the policy book at each school site. See an administrator for more information.

## HARASSING SLURS:
The Kent School District recognizes that regardless of intent, racial, ethnic, sexual and other harassing slurs have the capacity of substantially harming both individuals toward whom the slurs are addressed and the educational community as a whole. Slurs are defined as derogatory remarks, words, phrases, pictures or gestures referencing or directed toward any individual or group(s). Such actions among members of the same group are also considered slurs. Students who make racial, ethnic, sexual or other harassing slurs shall be subject to disciplinary action and may be subject to criminal charges. Students should report all incidences of intimidation or harassment to an administrator and file a complaint as outlined in Board Policy 5013.

## BEHAVIOR INTERFERING WITH SCHOOL BUSINESS
The following actions or any other action which interferes with, disrupts, or impedes the orderly operation of the school, conduct of school business, or the educational environment shall call for corrective action up to and including suspension and/or expulsion by school officials when violations occur in school buildings, on school property, or at school-sponsored events.

## AGGRESSIVE BEHAVIOR:
Aggressive or reckless behavior, including horseplay, which jeopardizes the health, safety, or welfare of other students or staff members, will be subject to discipline, Saturday School, and/or suspension.

## ATTENDANCE:
Daily punctual attendance is required in accordance with state law and school board rules. Students will attend regularly scheduled classes unless officially excused (RCW 28A-27)

## BUS TRANSPORTATION:
Bus transportation is provided by the school district and is a privilege. Students must obey the driver and rules while on the bus and waiting for the bus to arrive. Privilege of riding the bus may be revoked for misbehavior and may result in suspension from school. Bus rules are available in the Main Office.

## CELLULAR PHONES AND PAGERS
Cellular phones and pagers pose a disruption to the educational process. Further, these devices are often targets of student theft and are seldom recovered. During normal school hours, all phones and pagers must be turned off. The student must surrender to staff when he or she is requested to do so. These devices will be confiscated and returned only to parents. Failure to turn over the requested devices to any adult in the building making the request will result in suspension. In an emergency, parents may call the school for immediate contact with the student. (also see personal electronic technology)

## CONDUCT AT ASSEMBLIES, COCURRICULAR ACTIVITIES, AND EXTRACURRICULAR EVENTS:
These events are held for the education and enjoyment of students, staff, parents, and the community. Students are expected to extend every courtesy as an audience and to maintain a high standard of conduct. Misconduct may result in loss of privileges and/or suspension.

## COOPERATION WITH SCHOOL PERSONNEL:
Students shall obey the lawful instructions of school district personnel –(RCW 28A-87-010 and RCW 28A-87-055) students are required to be in possession of their Kentridge Identification Card at school and KSD related events. Failure to comply with a reasonable request may be grounds for suspension.

## DISRUPTIVE CONDUCT:
Conduct, which materially and substantially interferes with the educational process, is prohibited. State law makes it a crime to willfully create disturbances on school premises during school hours, activities, and/or meetings. State law empowers each teacher to hold students strictly accountable for disorderly or anti-social conduct while under the teacher's supervision and to temporarily exclude students from the classroom, activity, or instructional area as well as to make recommendations for suspension. When a student is disruptive in class and is sent to an administrator, disciplinary sanctions are invoked. Repeated occurrences may result in suspension from school or class.

## DRESS AND APPEARANCE:
Students and parents determine the personal dress and grooming standards provided dress and grooming shall not:

   A.   Lead school officials to reasonably believe that such dress or grooming shall disrupt, interfere with, disturb, or detract from the school environment or activity and/or educational objectives.

   B.   Create a health or other hazard to the student's safety or to the safety of others.

27

C    Create an atmosphere in which a student, staff, or other person's well-being is hindered by undue pressure, behavior, intimidation, overt gesture or threat of violence.

D.    Imply gang membership or affiliation by written communication, marks, drawing, painting, design or emblem upon any school or personal property or one's person.

E.    Expose the body torso, shoulders or undergarments. Bare midriff is not allowed.  Clothing must be of proper size and fit to remain secure on the body torso.

F.    In any other way promote other prohibited conduct.

G.    No head coverings are to be worn on campus during normal school hours. Students who bring head coverings to school are expected to remove them prior to entering the campus and then store them in their lockers. Head coverings are defined as any object or material which covers any portion of the head above the neck to include hats, bandannas, hoods, hair nets. Personal grooming items such as picks and combs must not be displayed. Females who maintain their hairstyles using objects or materials typically used by females for that purpose are exempt, although bandannas will not be allowed. Worn head coverings will be confiscated, and may be held the school until the end of the school year. Failure to hand over the requested item(s) will result in suspension. **Bandannas will be permanently confiscated.**

The building administrator or teaching staff, in connection with the sponsor, coach, or other person in charge of an extracurricular activity, may regulate the dress and grooming of students who participate in the activity if the building administrator or the teaching staff believe that the student's dress or grooming:
Creates a hazard to the student's safety or to the safety of others.
Shall prevent, interfere with or adversely affect the purpose, direction, or effort required for the activity to achieve its goals.
If the student's dress or grooming is objectionable under these provisions, the principal or teaching staff shall request the student to make appropriate corrections. If the student refuses, the administration shall notify the parent or guardian and request that person to make the necessary correction. If the student and parent refuse, the building administrator shall take appropriate corrective action. Students may be suspended, if circumstances so warrant. Students who violate provisions of the dress code relating to extracurricular activities may be removed or excluded from the extracurricular activity for such period as the principal or designee may determine.

DRUGS:
(legally prescribed to the student, non-prescription drugs, and all other over-the-counter medication)
All legally prescribed drugs, over-the-counter and/or non-prescription medications must be under the direction of the school nurse or nurse technician.  Non-prescription and over-the-counter medication includes, but not limited to, diet pills, caffeine pills, painkillers, cold medicines, and herbal supplements.  A student who use, possess, or distribute medication (controlled substance) on campus is in violation of district policy #3240 and will fall under the exceptional misconduct guidelines.  (see exceptional misconduct, page 17)

THE EATING AREA:
The cafeteria is the designated eating area.  Five minutes at the beginning and end of lunch may be used to go to lockers.  Being in any other area requires a pass.  The eating area is to be properly maintained.  All students are expected to assist in maintaining a clean lunchroom, including helping pickup litter left behind by fellow students within the surrounding vicinity. When students leave their tables, it is often difficult to establish ownership of litter left behind. As a result, administration or staff may request assistance in cleaning up the area. Students are expected to comply. Failure to do so may result in school discipline.

Appropriate behavior is expected of students during lunchtime.  Infractions may result in corrective action including loss of student privileges, up to and including suspension.

FORGERY:
Any unauthorized signature or alteration of any document is prohibited and subject to disciplinary action.

GAMBLING:
Students are not allowed to gamble on district property.

LEWD CONDUCT:
Any lewd, indecent, or obscene acts or expressions while on school district property or at school-related activities will be grounds for corrective action.

OFF-CAMPUS EVENTS:
Students at school-sponsored events will be governed by school district rules and regulations as if the event were at the home school and are subject to the authority of the school district officials.

PERSONAL PROTECTION SPRAY DEVICES (PPSD):
The state law requires that students' ages 14-17 have parent permission to carry a personal protection spray device (PPSD), that must be registered with school officials.  However, pursuant to this law, students who unlawfully carry, discharge or distribute a PPSD will be disciplined, assigned Saturday School, and/or suspended.

28

PANHANDLING:
Panhandling is an infringement of student rights in that it may constitute intimidation or harassment and is prohibited on the Kentridge High School campus, school district property and at school-sponsored events.

CD PLAYERS, MUSIC PLAYERS, VIDEO RECORDERS, CAMERAS, and OTHER PERSONAL ELECTRONIC DEVICES:
These personal electronic devices pose a disruption to the educational process. . Further, these devices are often targets of student theft and are seldom recovered. Students are expected to leave these items **at home.** Students in possession of these items will be asked to surrender them to a teacher or an administrator and may be confiscated for the remainder of the semester. Failure to surrender these items will result in school discipline, including and up to suspension.

REFUSAL TO IDENTIFY ONESELF:
All persons must upon request identify themselves to proper school authorities in the school buildings, on school grounds, or at school-sponsored events. Failure to do so will result in suspension and/or arrest. Students must honor any reasonable request from school personnel while on school district property or at school-sponsored events.

SALES:
Sales of materials or products must be authorized by the school administration.

SQUIRT GUNS, FRISBEES, CARDS, and other similar types of games:
These items can be disruptive. Students are expected to comply with any staff request to surrender them temporarily. Students in possession of these items will be asked to surrender them to a teacher or an administrator and may be confiscated for the remainder of the semester.

THROWING SNOWBALLS:
Snowballs pose a threat to safety and sanctions against snowball throwing will be the same as any other dangerous action.

TOBACCO PRODUCTS:
Kent School District is a tobacco-free district. No student will be permitted to use or have in their possession tobacco products while on school grounds, under school jurisdiction, or on adjacent streets during school hours. The possession or use of tobacco products at school or at school-sponsored events may result in suspension. **Lighters and matches are also prohibited.** (See Policies 3240 and 5260).

VULGARITY AND PROFANITY:
Vulgarity and/or profanity is prohibited anywhere on the school campus and at school events/activities on or off campus. In addition, displays of affection between students need to reflect self-control and respect for the reputation of oneself and another. Staff are expected to intervene in and report any vulgar/profane action or any display of affection which is embarrassing or offensive to others.

Legua _____ Greg _____ M _____ 12 _____
Print   Last Name              First Name              M.I.              Grade

| Kentridge High School |
| --- |

I have received a copy of the **school policies and procedures**, which have been reviewed with me by a staff member. I fully understand that all of these rules in effect for this school year and it is my responsibility to adhere to these rules.

In addition, I have also read the ACADEMIC INTEGRITY POLICY, which was reviewed with me by a staff member. I fully understand the policy.

_Greg Legua_ _____ 9/5/06
Student Signature                                            Date

_R. K. S_ _____ 9/5/06
Teacher Signature                                            Date